IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAYVON R. FLEMMING,

                 Plaintiff,

v.                                          OPINION and ORDER

JONATHAN BOHNSACK,                        19-cv-698-jdp
WILLIAM CONROY, and SEAN COUTLEY,

                 Defendants.

---

Pro se plaintiff Jayvon R. Flemming filed this action under 42 U.S.C. § 1983, contending that prison staff at Columbia Correctional Institution failed to protect him from attempting suicide and engaging in self-harm. Defendants' motion for summary judgment is before the court. Dkt. 17. Defendants initially moved for summary judgment as to Flemming's claims against all defendants. But defendants later withdrew their motion as to defendants Sean Coutley and William Conroy, conceding that there are genuine and material factual disputes regarding Flemming's claims against those two defendants. Dkt. 29, at 2.

As for Flemming's claim against Jonathan Bohnsack, I will assume for purposes of summary judgment that the events occurred as Flemming says they did. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) ("[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." (internal quotation marks and alterations omitted)). Based on Flemming's account of events, a reasonable jury could conclude that Bohnsack knew that Flemming might imminently cut himself, and that Bohnsack failed to take reasonable measures to prevent him from doing so. Therefore, I will deny the motion for summary judgment.

ANALYSIS

Flemming has a history of self-harm and suicide attempts. He had been placed on observation status multiple times and had been taken to the hospital for self-harm incidents prior to the August 10, 2018 incident in this case. Flemming says that defendant Bohnsack knew that he had a history of harming and cutting himself. (Bohnsack argues that Flemming has no personal knowledge about whether Bohnsack knew about Flemming's history self-harm, but Bohnsack does not deny knowing about Flemming's history. Flemming could testify that Bohnsack had seen him cut himself and had seen him on observation status in the past.) According to Flemming, he told Officers Bohnsack and Coutley twice that he needed help. First, at around 10:15 a.m., Flemming told them that he was feeling suicidal, had thoughts of harming himself, and needed to be placed on observation. Bohnsack said that he would notify the psychological services unit and the unit sergeant. At approximately 11:00 a.m., Flemming told Bohnsack and Coutley again that he was having thoughts of cutting himself, that he was going to cut himself, and that he needed to be placed on observation. Bohnsack told Flemming that they had notified the sergeant and the psychological services unit and that there was nothing else that they could do. Flemming stated again that he had a plan to cut himself, and Bohnsack responded, "Will do." Bohnsack then left. Approximately one hour later, Flemming attempted to kill himself by cutting a vein in his arm. He lost a lot of blood and was taken to the health services unit for treatment.

To prevail on his claim, Flemming must show three things: (1) at the time he spoke to Bohnsack, there was a strong likelihood that he would seriously harm himself in the near future; (2) Bohnsack knew of that strong likelihood; and (3) Bohnsack consciously failed to take reasonable measures to prevent Flemming from harming himself. *See Lisle v. Welborn*, 933 F.3d

705, 716–17 (7th Cir. 2019); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012). Defendants argued in their opening brief that Flemming cannot show that he was subjected to a risk of harm, because medical records show that Flemming's cuts were not serious. But defendants withdrew that argument in their reply brief after Flemming submitted evidence showing that he lost a large amount of blood and vomited up a staple. Dkt. 29, at 1.

Bohnsack's other argument is that Flemming has not presented evidence that Bohnsack knew of a strong likelihood that Flemming would seriously harm himself in the near future. Bohnsack cites *Johnson v. Garant*, 786 F. App'x 609 (7th Cir. 2019) in support his argument. In *Johnson*, correctional officers failed to act when the prisoner told them that "he felt suicidal and wanted to speak to a crisis counselor." *Id.* at 610. The court of appeals held that the prisoner's statements failed to create a genuine issue of material fact on the question whether the defendants were aware of a risk of harm because the statements "lacked any indication that [the prisoner] may have 'imminently' sought to have harmed himself." *Id.* To meet that standard, a prisoner must do "more than tell guards that he planned to commit suicide." *Id.*

Bohnsack argues that Flemming's statements to him are indistinguishable from those in *Johnson*, and that Flemming's statements do not meet the imminence standard required under *Johnson*. I would agree with Bohnsack if I was considering only Flemming's first statements to Bohnsack, in which he stated that he was feeling suicidal, had thoughts of harming himself, and needed to be placed on observation. Bohnsack would not know, from those statements alone, that there was a significant likelihood that Flemming would imminently harm himself. But Flemming asked Bohnsack for help again, less than an hour later. The second time, Flemming told Bohnsack that he had a plan to cut himself and that he was going to cut himself if he was not placed on observation. In addition, Flemming states that

3

Bohnsack knew that Flemming had harmed himself in the past. A reasonably jury could find that these additional facts put Bohnsack on notice that Flemming was on the verge of harming himself.

As I sated in the screening order, Flemming cannot succeed on a claim against Bohnsack if Bohnsack notified the psychological services unit and the unit sergeant about Flemming's situation, and if there was nothing more that Bohnsack could have done to help Flemming. *See Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) ("[D]efendants cannot be [held liable under the Eighth Amendment] if the remedial step was not within their power."). But Bohnsack did not submit any evidence showing that he notified anyone about Flemming's situation or that he took any steps to help Flemming.

I also conclude that Bohnsack is not entitled to qualified immunity. *See Locke v. Haessig*, 788 F.3d 662, 666 (7th Cir. 2015) ("The defense of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). It was clearly established long before August 2018 that a correctional officer who knew that an inmate may imminently seek to take his own life or engage in serious self-harm must take reasonable steps to prevent the inmate from performing the act. *See Estate of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017); *Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 776 (7th Cir. 2014); *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001). Because Flemming has submitted evidence from which a jury could conclude that Bohnsack failed to take reasonable measures to help Flemming despite knowing that Flemming had a plan to harm himself in the near future, Bohnsack is not entitled to qualified immunity.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, Dkt. 17, is DENIED.

Entered December 23, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge